UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In Re:                                                                                                  Case No. 14-40349-wsd
                                                                                                                         Chapter 11
KEY HOTEL CORPORATION,                                           Hon. Walter Shapero

      Debtor-in-Possession.

_____/

## OPINION REGARDING DEBTOR'S EMERGENCY MOTION FOR ADEQUATE ASSURANCE

The Debtor, which operates a hotel facility in the City of Detroit, filed this Chapter 11 petition on January 13, 2014. On July 2, 2014, the Debtor filed the present Emergency Motion for Adequate Assurance to Creditor Detroit Water & Sewerage Department Under Bankruptcy Code § 366 (Dkt. 110), by which the Debtor proposed to provide DWSD with an adequate assurance utility deposit of $4,300. The Debtor was already required by a prior order of the Court (Dkt. 107) to pay all outstanding and current DWSD bills by July 21, 2014 (that order pertained to creditor Regency Motel, Inc., the land contract vendor to the Debtor, and did not involve or directly pertain to DWSD or the adequate assurance issue involved here). DWSD responded to the Debtor's motion, seeking an adequate assurance payment in the now-corrected amount of $11,056.74. The Court held an initial hearing on July 8, 2014 and entertained additional briefs. The Court then held an evidentiary hearing on July 16, 2014.

DWSD argues that, pursuant to *In re Lucre*, 333 B.R. 151 (Bankr. W.D. Mich. 2005), the Debtor cannot now (more than 20 or 30 days after the filing of the case) employ 11 U.S.C. § 366(c) to modify an adequate assurance payment until DWSD first receives an adequate assurance of payment that is satisfactory to DWSD, as stated in § 366(c)(2). Both parties agree that the requirements stated in § 366(c)(2) were not met. DWSD also argues that it has always

bargained with the Debtor in good faith. Lastly, DWSD argues that, because it is a department of the City of Detroit, which is presently a Chapter 9 debtor, this Court may not enter any order restricting DWSD from exercising its legal rights because such are property of the bankruptcy estate in the *City of Detroit* case and appropriate relief from stay has not been sought in that case.

The Debtor's principal legal position is that *In re Lucre*'s interpretation of § 366(c) may require a utility to bargain in good faith with a debtor before actually electing to discontinue utility service. *Id.* at 154; *see In re Beach House Prop., LLC*, 2008 WL 961498 (Bankr. S.D. Fla. Apr. 8, 2008) (disagreeing with *In re Lucre*). The Debtor argues that DWSD has not bargained in good faith because it is insisting on excessive adequate assurance that would threaten the Debtor's efforts to reorganize. Additionally, the Debtor argues that the prior adequate protection order entered by the Court (albeit an order that does not involve or directly pertain to DWSD or even address the adequate assurance issue) somehow gives the Court the ability to "modify" it pursuant to §§ 366 and 105 to include adequate assurance to DWSD.

It appears that the Debtor's interest in the hotel property is that of a land contract vendee from Regency Motel, Inc. A number of years prior to May or June 2013, the Debtor had sold its interest in the property on a second land contract to another entity which, until then, possessed and operated the property and was responsible for its water and sewerage bills (and in fact is still named on the monthly bills). That other entity's second land contract interest in the property was apparently terminated in state court proceedings around June 2013, at which time the Debtor came back into possession and re-commenced operating. At that time, there was a material unpaid delinquency owed to DWSD. Since the Debtor came back into possession, and prior to the filing of this case, the Debtor made only one payment on the then accruing DWSD bills, that being a $2,500 payment in January 2014. Since the filing of this case, the Debtor has not made

any payment on current bills, except for the indicated $3,000 tardily paid pursuant to the referred-to order obtained by Regency Motel, Inc. The average monthly bill during the year ending June 2014 approximated $3,685.58, appearing to range between around $2,500 and $5,200.

At the July 16, 2014 evidentiary hearing, a customer service representative of DWSD (the only witness) testified credibly as to the following: (a) the last time the account was current was some time in 2012; (b) DWSD showed a balance as of the bankruptcy filing date of approximately $42,000 and, according to the admitted account statements, the amount due for the period between June 2013 and the filing date approximated $27,000; (c) approximately $15,000 in current charges accrued on the account postpetition, on which the indicated $3,000 was tardily paid pursuant to this Court's prior order; (d) DWSD has never shut off service to the subject property; and (e) DWSD's regular policy toward Chapter 11 debtors is to demand adequate assurance in the amount of three times the average monthly bill (based on a monthly average over the past twelve months), which in this case calculates to be $11,056.74. The Debtor did not present any witnesses or evidence.

The Debtor filed a Plan and Disclosure Statement on July 11, 2014, which interestingly did not include or disclose any of the financial information relating to the periods prepetition, postpetition to-date, and for the life of the plan, as mandated by this Court's disclosure statement content requirements. The Debtor filed monthly reports through May 2014, indicating that it has not been consistently currently paying all of its operating expenses, and that for May 2014 at least, its income did not meet its projections and its expenses were materially in excess of those projected.

There are, as noted, a number of potential raised legal questions. In a practical sense, they only come into play if DWSD, for instance, is not satisfied with what the Court decides as to the amount of adequate assurance. Thus, the need to decide those legal questions may be obviated by the Court deciding what that amount should be. In the Court's view, that is what the parties want the Court to, at least initially, decide. The adequate assurance involved under § 366 is assurance that the Debtor will be able to pay its postpetition and ongoing water and sewerage charges. The stated and only evidence before the Court requires it to conclude that the demanded sum of $11,056.74 (which the Court rounds off to $11,000) is reasonable and what the statute requires. The Court will not, at least at this point, discuss or pass upon the other legal arguments raised by the parties because this determination may dispose of the matter.

That said, there was little or no discussion or argument at the hearing as to the form or timing of the required payment. The Court infers, at least insofar as DWSD might argue, that it should be in the form of a cash deposit and be paid or turned over forthwith, particularly in this case, which is some seven months old and in which there already are material delinquencies. The statute sets forth several possible ways that adequate assurance may be effected and is not totally clear whether the choice is solely that of the utility or whether, as appears more likely to be the case, the Debtor has the option of satisfying the determined amount by any of the means indicated in the statute.

The Court concludes that DWSD should prepare and present under the local rule what it believes to be an appropriate order effectuating this ruling, to which the Debtor may object. If the parties cannot otherwise agree and if the Debtor does object, a further hearing will be held to settle the order.

**Signed on July 18, 2014**

> /s/ Walter Shapero
> **Walter Shapero**
> **United States Bankruptcy Judge**